IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| THE SALT LAKE TRIBUNE (KEARNS TRIBUNE, LLC), et al.,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>ELAINE L. CHAO, the United States Secretary of Labor,<br><br>　　　Defendant. | **MEMORANDUM OPINION AND ORDER**<br><br>Case No. 2:07-CV-739<br>Judge Dee Benson |

Before the court is Plaintiffs' motion for a temporary restraining order/ preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure. Specifically, Plaintiffs seek to enjoin the Mine Safety and Health Administration ("MSHA") from conducting any more closed investigative proceedings regarding the Crandall Canyon Mine accident and, to the extent closed proceedings have already occurred, require an immediate release of any transcripts of such proceedings.

**Factual Background**

On August 6, 2007, an accident occurred at the Crandall Canyon Mine, an underground coal mine in Huntington, Utah, which resulted in six miners being trapped. Rescue efforts began that same day. It was believed that the trapped miners were approximately four miles from the mine's entrance. Therefore, the rescue efforts consisted of not only clearing coal from the

mine's entrance, which was a time consuming process, but also consisted of drilling bore holes into the mine from the surface above where the miners were believed to be.

On August 16, 2007, an outburst of coal occurred claiming the lives of three rescuers and injuring six others, all of whom were working to clear the mine's entrance.  Rescue operations were then suspended indefinitely. These incidents generated a great deal of local, state, and national interest.

On August 30, 2007, MSHA appointed a team of government investigators to investigate both the original accident and the accident that occurred during rescue operations.  According to MSHA, the purpose of the investigation is to determine the cause of the accidents, to assess whether there were any violations of the Federal Mine Safety and Health Act or MSHA's regulations, and to determine if civil or criminal enforcement actions are appropriate.  The investigation team is comprised of MSHA officials from around the country, as well as a designated official from the State of Utah.  All members of the investigative team, therefore, are government employees.

As part of the investigation, MSHA employees are conducting non-public interviews of miners and other individuals who may have information regarding the accident.  The interviews are voluntary, and each witness is placed under oath.  Witnesses may request confidentiality or refuse to answer any question.  Each interview is conducted by one member of the government investigative team, but other members, including an attorney from the Department of Labor, may sit in to observe. Also present are a stenographer and a notary. Additionally, the individual being interviewed can choose to have a personal representative present (for example, an attorney or a

family member). The interviews are not open to the public, the media, non-governmental employees, or to representatives of any outside groups.

MSHA has stated that following the investigation it will issue a formal report summarizing the investigative team's findings and identifying root causes of the accident. Any contributing violations of MSHA's safety standards and regulations will be cited at the conclusion of the investigation. In addition, if the facts indicate that there may have been any criminal violations, MSHA will refer the matter to the Department of Justice.

Plaintiffs argue that MSHA's actions regarding the mine accident are as much at the center of the public controversy as are the actions of others. Therefore, stale information from MSHA's investigation is not adequate information to give to the public. Plaintiffs argue that the public has a First Amendment right to know about the facts surrounding the accident as well as the activities of the MSHA panel. Consequently, Plaintiffs have filed this motion for preliminary injunction.

## Preliminary Injunction Standard

Under the law of the Tenth Circuit, a preliminary injunction is appropriately granted where the moving party demonstrates the following:

> (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Federal Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999) (citing *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1489 (10th Cir. 1997)). In the present case, this analysis is straightforward. If it can be established, as Plaintiffs allege, that the public has a Constitutional right under the First

3

Amendment to be present during MSHA's investigative proceedings of the Crandall Canyon Mine, then Plaintiffs will have shown a substantial likelihood of success on the merits, and the other three requirements will easily be satisfied.

The Supreme Court has held that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Similarly, threatened injury from the violation of First Amendment freedoms will almost always outweigh the possible harm to the opposing party, and such an injunction, if issued, will not adversely affect the public interest. *See City of Chanute v. Kansas Gas & Elec. Co.*, 754 F.2d 310, 312 (10th Cir. 1985). Therefore, if Plaintiffs can show that MSHA's non-public investigations are a violation of First Amendment freedoms, or in any other way unlawful, then a preliminary injunction will be issued forthwith.

## Analysis

**A.     The Federal Mine Safety and Health Act of 1977**

Before moving to the Constitutional issue, the statutory authority under which MSHA derives its power to conduct mine investigations will be addressed. The Federal Mine Safety and Health Act of 1977 ("the Act") was enacted to ensure safety and health in the nation's mines. 30 U.S.C. § 801, *et seq*. Pursuant to the Act, Congress authorized the Secretary of Labor, acting through MSHA, to promulgate mandatory safety and health standards for the nation's mines and to conduct regular inspections of those mines. 30 U.S.C. §§ 811 and 813.

Section 813(a) of the Act authorizes MSHA to conduct investigations of mines for the following purposes:

> (1)obtaining, utilizing , and disseminating information relating to health and safety conditions, the causes of accidents, and the causes of diseases and physical

> impairments originating in such mines, (2) gathering information with respect to mandatory health or safety standards, (3) determining wether an imminent danger exists, and (4) determining whether there is compliance with the mandatory health or safety standards ... or other requirements of this chapter....

30 U.S.C. § 813(a). Separate and distinct from this general investigatory authority, § 813(b) of the Act grants MSHA the authority to hold public hearings as follows:

> For the purpose of making any investigation of any accident or other occurrence relating to health or safety in a coal or other mine, the Secretary may, after notice, hold public hearings, and may sign and issue subpoenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and administer oaths. ...

30 U.S.C. § 813(b).

This section is discretionary. *See Int'l Union, United Mine Workers of America v. Martin*, 785 F. Supp. 1025, 1027 (D.D.C. 1992). "[N]othing in the statute requires that investigations outside the mine be conducted solely as public hearings. Nor does the statute provide that any particular type of interview outside the mine pursuant to an investigation triggers a requirement that a public hearing be convened." *Id*.

It is clear from the language of the Act, therefore, that the Act itself does not require MSHA's investigation to be open to the public. At oral argument, Plaintiffs' counsel conceded this point. Plaintiffs' argument is not that the media and the public have a right of access to MSHA's investigation under the Mine Act, or any other public law, but rather that there is a right to public access under the First Amendment to the United States Constitution.

**B.      The United States Constitution**

Plaintiffs argue that the First Amendment mandates public access to the type of MSHA proceeding at issue in this case. They point, however, to nothing specific in the Constitution to support their claim. While Plaintiffs have referred the court to cases such as *Globe Newspaper*

*Co. v. Superior Court of Norfolk County*, 457 U.S. 596 (1982) and *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), those cases simply stand for the proposition that under the First Amendment, witness testimony in a criminal trial is almost always open to the public.  This is not a criminal trial.  This is a government investigatory process that MSHA is authorized by statute to conduct.  The court cannot make the leap that Plaintiffs suggest by concluding that because the public has a First Amendment right of access to hear witnesses in a criminal trial, they also have a right of access to private government investigatory interviews.

In making their argument that the public has a Constitutional right of access to such interviews, Plaintiffs rely almost exclusively on *Society of Professional Journalists v. Secretary of Labor*, 616 F.Supp. 569 (D. Utah 1985), *vacated as moot*, 832 F.2d 1180 (10th Cir. 1987) [hereinafter *Professional Journalists*], a case that was decided by Judge Winder of this court in 1985.  In *Professional Journalists*, MSHA was, pursuant to its statutory authority, conducting an investigation into the cause of the Wilberg Mine accident of 1984.  As part of the investigation, MSHA conducted "formal hearings and asked several people to give sworn testimony to be taken down verbatim by a court reporter." *Id*. at 570.  MSHA invited several groups to be present at these hearings, including representatives of the mine owner and the United Mine Workers of America.  However, MSHA closed the hearings to the press and the rest of the public.  *See id*.  On these facts, Judge Winder held that the press and public had a Constitutional "right of access ... based on the penumbra of the first amendment guarantees." *Id*. at 573.

Disregarding the fact that Judge Winder's opinion was later vacated on mootness grounds and ordered by the Tenth Circuit to be withdrawn**,** 832 F.2d 1180 (10th Cir. 1987), this court has studied that decision extensively in trying to reach a conclusion in this case.  While it is difficult

6

for this court to understand just exactly what *Professional Journalists* held, and even more difficult to understand where in the "penumbra of the first amendment" a right of access to government investigations can be found[1], it is clear to this court that Judge Winder's decision was limited to its facts. Judge Winder stated: "This court's holding is limited to the hearings conducted by MSHA in Price, Utah, that are the basis of this case." *Professional Journalists*, 616 F.Supp. at 578. The facts in the present case are materially different from the facts that were presented to Judge Winder. In this case, MSHA is conducting private, government-only interviews. Unlike *Professional Journalists*, no company or union representatives, or any other outside individuals, are permitted to attend or participate in the interviews.

Indeed, the temporary restraining order Judge Winder issued in *Professional Journalists* allowed MSHA to exclude the media so long as attendance at interviews was limited to "(1) MSHA personnel; (2) a court reporter; (3) the person to be questioned; and (4) his, or her, attorney or advisor." 832 F.2d at 1182. This is almost the exact situation in this case. The only difference is that in this case a state official (who is part of the investigation team) and a notary are also present. The holding in *Professional Journalists* is limited to its facts, which on their face allowed access to some public actors while excluding others. That is not the case here.

To support their Constitutional claim, Plaintiffs make several policy arguments as to why the press and public should be granted access to the MSHA investigation. Plaintiffs contend that

---

[1] While the court found no cases holding that the First Amendment granted the public a right of access to government investigations, it did find cases tending to cut the other way. *See, e.g.*, *Houchins v. KQED*, 438 U.S. 1, 16 (1978) (Stewart, J., concurring) (The First Amendment does "not guarantee the public a right of access to information generated or controlled by the government"); *Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001) ("It is well-settled that there is no general First Amendment right of access to all sources of information within governmental control.").

media access will ensure that MSHA does its job properly and will quickly cure any of its mistakes. *See Professional Journalists*, 616 F.Supp. at 576. Plaintiffs also argue that closed proceedings breed mistrust and simply give MSHA an opportunity to distort the truth. *Id.* Plaintiffs quote Judge Winder to point out that "openness safeguards our democratic institutions." *Id.* On the other side of the policy debate, the government makes equally passionate arguments. The government argues that a court-ordered delay will disrupt the investigation and potentially result in some individuals not being available, or willing, to be interviewed once the investigation is continued (particularly if MSHA is ultimately ordered to open the interviews to the media and the public). Furthermore, the government argues that allowing the media to be present during the interviews may damage the integrity of the investigation by conveying incomplete information to the public, influencing the statements of individuals who have not yet been interviewed, and may possibly lead to the disclosure of confidential information and information regarding potential civil or criminal violations.

This court finds many of these policy arguments persuasive. But although the court may agree with some of these positions on policy, they are not the proper focus of the present issue before the court. While it may be true that requiring all government investigations to be open would result in greater accountability and more accurate information, if such a requirement is to be imposed, it must come from a statute that is debated and passed by Congress and signed into law by the President.

It is not this court's or any other court's role to make law, only to interpret it. Because this court can find nothing in the Constitution or in the statutes of the United States to support

Plaintiffs' position, the current MSHA proceeding may proceed without interference from this court. Plaintiffs motion for a preliminary injunction is DENIED.

    IT IS SO ORDERED.

    DATED this 9th day of October, 2007.

                                              Dee Benson
                                              United States District Judge